MONASH YOUNKER CO. v. NATIONAL STEAM SPECIALTY CO.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1913.)

No. 1,930.

PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — RELIEF-VALVE FOR STEAM RADIATORS.

The Brissenden patent, No. 952,414, for an automatic relief-valve for steam radiators in which the proper adjustment of the parts is indicated by the escape of steam when the valve seat is displaced, in view of the prior art cannot be given a broad construction, but must be limited to the peculiar arrangement of the parts shown, and as so limited is not infringed by the device of the Leuthesser patent, No. 944,338, in which a stem indicates displacement, operating mechanically, without the aid of steam pressure.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit in equity by the National Steam Specialty Company against the Monash Younker Company. Decree for complainant, and defendant appeals. Reversed.

Samuel W. Banning, of Chicago, Ill. (Thomas A. Banning, of Chicago, Ill., of counsel), for appellant.

Charles C. Bulkley, of Chicago, Ill., for appellee.

Before BAKER and KOHLSAAT, Circuit Judges, and CARPENTER, District Judge.

KOHLSAAT, Circuit Judge. The District Court held claims 1, 2, 5, 7, 13, 14, 15, 16, 17, and 18 of patent No. 952,414, granted to W. W. Brissenden on March 15, 1910, on application filed July 22, 1904,

for an improvement in automatic relief-valves for steam radiators, to be valid and infringed. Hence this appeal.

Appellant (herein described as defendant) manufactures a relief-valve which he claims is substantially disclosed in patent No. 944,338, granted to the Monash Younker Company as assignee of Leuthesser December 2, 1909, for a relief-valve device on application filed July 20, 1905. Claims 1 and 7 of the Brissenden patent, which is owned by the appellee (described herein as complainant), read as follows:

"1. A valve comprising a valve-member adapted to expand when subjected to heat, and an adjustable valve-seat provided with a spring-pressed face adapted to be engaged by said valve-member when the latter expands under the influence of heat, or when the valve-seat is adjusted into contact with the expansible valve-member, said valve-seat having its top provided with means whereby displacement of said face is indicated."

"7. A valve comprising a valve-member adapted to expand when subjected to heat, and a spring-pressed valve-seat, the said valve-seat and its spring backing being nondetachable from each other and organized into a structure which is removable as a unit from the interior of the balance of the valve structure, the spring being fully inclosed by such unit, and means whereby displacement of said seat is indicated."

These claims fairly set out the substance of the claims in suit. Figs. 1 and 3 of the drawings are as follows, viz.:

The Leuthesser valve is fairly described in Figs. 1 and 7 of the drawings of that patent herewith reproduced:

Both valves are well known in the art as to their principles of operation. They are so arranged as to permit of the expulsion of air from the coils or heating system, and prevent the escape of steam by the intervention of an automatic thermostatic member coacting with a valve-seat; this being one of the well-known means to effect that end. As will be seen, the general construction of the valves is similar. Complainant's counsel in his brief states:

"The invention of Brissenden described and claimed in the patent resides in the combination and arrangement of parts by means of which a signal or indication is given whenever the valve-seat is overadjusted, that is, brought down too close to the end of the expansible member."

He further says:

"The invention of Brissenden did not therefore reside alone in the provision of means of any sort or kind for giving a signal, indicating overscrewing, although that was novel in a radiator valve, but does consist in accomplishing the result of giving a signal or indication of overscrewing of the yielding valve-seat in relation to an expansible valve member, without altering or changing the predetermined tension of the spring in the adjustable plug acting upon the yielding valve-seat."

Except for some differences of a minor character, it may be said in a general way that the several indicating devices of Brissenden and Leuthesser differ from each other mainly in that the former signals by the escape of steam from a vent arranged for that purpose, while in the latter the warning is given by the protruding of a stem from the top of the adjustable hollow plug, also arranged for that purpose. With reference to the Brissenden drawings above set out, the specification says:

"The adjustable valve-seat $C$ is, therefore, preferably constructed as follows: The seat is composed preferably of an externally threaded body portion

208 F.—36

$c$ provided with a chamber $c^1$ having a shoulder or ledge $c^2$ formed around the lower edge of the body. The upper end of said valve-seatbody can be provided with a portion $c^3$ whereby it can be screwed into and out of the valve casing by means of a screw driver or other tool. The valve-seat as a whole includes a plate $c^4$ having a concave lower face and having also a number of lugs, $c^5$ projecting upwardly around its edge or perimeter. Said plate is of a size to fit the chamber $c^1$, but loosely enough to permit leakage around its edges, and thence upwardly through the opening or indicating device $x$, when the said plate is raised from its seat or resting place on the ledge $c^2$. Normally, said plate is maintained in place upon said ledge $c^2$ by means of a spring $c^6$ interposed between the crown or upper wall of the chamber $c^1$ and the convex or upper surfaces of said plate. In this way, said plate can rise from its seat or resting place; and at such time the lugs $c^5$ which are provided with straight or vertical bearing faces prevent the plate from binding against the side walls of the chamber in which it is located. In use, the valve-seat $C$ thus constructed is screwed down in the casing $A$ until it arrives at a point where the upper end of the expansible valve-member $B$ will just engage the concave face of the plate $c^4$, when steam at the proper temperature enters the valve. Obviously, however, should the steam be above the normal or desired temperature, the expansible valve-member $B$ will then expand longitudinally and in such manner as to raise the plate $c^4$ from its annular seat or resting place. In this way, the valve-seat is practically provided with a yielding face, whereby abnormal or undue expansion on the part of the expansible composition is prevented from doing any harm whatever to the valve as a whole; and particularly from causing the expansible composition to crack, buckle, crush or otherwise become unfit for further use.

"It is obvious that, in adjusting the plug-like valve-seat $C$, and in case the same is adjusted too near the expansible valve-member, the steam will, when the said valve-member expands, escape upwardly through the said plug-like valve-seat, thereby indicating that accurate adjustment of the valve-seat has not, as yet, been attained."

### The patentee further says:

"The opening in the top of the plug $C$ serves as an indicating device for telling when the valve-seat is displaced. When the cap $D$ is off, and when the valve is being adjusted for use, the escape of steam through the opening $X$ will serve to indicate to the user or the steam fitter the location of the valve-seat. In this way, the exact or proper adjustment can be obtained even after the valve is fully connected up in the system, and even when the steam is turned on."

He claims broadly any suitable means whereby the displacement of the valve-seat is audibly or visibly indicated. Each of the claims sued on contains the claim in substance: "means whereby displacement of said seat is indicated."

"The improvement of Brissenden," says counsel, "consists in a hollow adjustable plug carrying the yielding valve-seat and the spring within it, in combination with an expansible valve member; so that the adjustment of the plug in position does not change or alter the tension of the spring, these parts so co-operating when the plug is overscrewed in relation to the expansible member as to give a signal."

Defendant's device has the hollow adjustable plug carrying the slidably mounted valve-seat backed by a coil spring, also within the plug, the valve-seat provided with an upward extending indicating stem, the adjustable plug provided with a notch whereby a screw-driver may be used to advance the plug and consequently the valve-seat, upon the expansible member until the two contact. Further driving of the plug

will elevate the indicating stem which in turn dislodges the screw-driver and prevents too great an advance of the plug carrying the valve-seat, while it serves to indicate displacement, thus mechanically showing that contact between the seat and the expansible member has been effected, and this, too, without regard to whether steam is introduced in the valve-space or not, although there must be something to expand or otherwise extend the expansible member into such contact, being generally a distance of about one-half of an inch.

Complainant claims this protruding stem as the equivalent of its indicating device, wherein the dislodged valve permits the escape of steam in order to indicate that the contact between the co-operating valve parts is dangerously tense, so that, by the use of the screw-driver, the pressure of the plug carrying the seat may be relieved. In defendant's device, further advance of the plug and seat is necessarily prevented and the same information is given.

"An adjuster," says defendant's expert, "through the indicating stem of defendant's valve is able to determine to what position to set the adjustable member in order to leave a clearance or furnish a contact between the yieldable member and the expansible member, and this without using any device or medium outside of the valve structure."

He further says the allowance to be made for expansion can be safely estimated.

The use of steam as an indicator is not new. In Van Auken patent, No. 476,844, granted June 14, 1892, for valves used in connection with steam-heating systems, escaping steam would indicate the incomplete adjustment of the expansible member in its seat. This, however, is not there claimed as an element of the combination. The same, in substance, may be said of the Dixon patent, No. 504,972, granted September 12, 1893, for a radiator valve. These both have means for showing nonclosure of the valve parts. In Schollay patent, No. 313,892, granted March 17, 1885, for a radiator valve, the shutting off of the escape of steam indicates overadjustment of the adjustable members. Whitman patent, No. 478,489, granted July 5, 1892, and Duer patent, No. 673,319, granted April 30, 1901, for air and vacuum valve for radiators, are practically like Van Auken in this respect.

Prior to the time when complainant began the manufacture of the Brissenden valve, it had been using a valve-seat on which the plug was solid, save for an opening through its center. This was used in place of the chambered plug of Brissenden, and the hole or opening was intended to indicate, by the escape of steam, or absence of such escape therefrom, whether or not proper adjustment has been effected between the plug and the expansible member. Thus, as above stated, it was no new thing to employ steam in indicating the relative condition of the valve parts. Nor was it new, broadly, to indicate by mechanical means the relation of the expansible valve and its seat to each other. This is shown in the English patent to Jeffery, No. 12,513 of 1894, on application filed June 28, 1894, by the backing away of a nut, i. e., the nut on the threaded stem from the end of the casing. This device very much resembles that of defendant. Although it pertains to steam-traps, it has the same function as a radiator-valve. This backing away of

the nut would indicate that valve and seat members are in contact with each other. This device requires the assistance of manual intervention in the initial displacement of the nut. However, it shows a mechanical means for indicating the displacement of the valve parts.

It will be seen that Jeffery united his protecting spring and adjustment indicated in the spring-seat. With regard to the so-called protecting device, i. e., the spring, it is found in many of the prior art patents: In the Grounell, 1889, British patent, it is located beneath the expansible member. It is similarly located in the Dixon, 1893, patent; in the Roesch, 1904, patent; and others. Its location is a matter of convenience; its use, almost as old as the need for it. The claims in suit contain certain novel features, as the tilting base of the seat and co-operation with the steam exit aperture—elements not found in defendant's valve, and elements which, therefore, need not be here considered. Whether it presents patentable subject-matter and arrangement need not, under our view of the case, be here decided. The art is one which has been well covered. From the foregoing comparisons, it is evident that complainant's patent is not basic, or to be construed broadly. Whatever invention it possesses, resides in its peculiar arrangement of parts. As to it, defendant's indicating elements are not equivalents. In granting to Leuthesser his patent, No. 944,338, aforesaid, the examiner was evidently of the opinion that the granting of a patent should be limited to a device for, or a method of, providing automatic indicators, and not to the idea. In this we concur. Complainant may not, by the insertion of the phrase, "Means whereby displacement of said seat is indicated," pre-empt the whole field of indicating devices for steam-radiator valves of the character here involved. It surely was never the purpose of the patent statutes to stifle research and discovery and consequent advance in the domain of any one of the useful arts. Thus limited, it is apparent that the two devices are not comparable as equivalents.

The decree of the District Court is therefore reversed, with directions to vacate its decree and dismiss the bill for want of equity.